## Edward James *vs.* Inhabitants of Scituate.

If prior to *St.* 1861, *c.* 222, a town had voted to pay to each volunteer soldier raised and being an inhabitant therein and mustered into the service of the United States for the defence of the government a certain sum per month, and also "that each volunteer soldier belonging to this town be allowed one dollar per day for each and every day he is drilled under proper authority," and an inhabitant in pursuance thereof signs a paper enrolling himself with others into a company of volunteer militia for five years, "with the full understanding that we are liable at any moment to be ordered into active service under the government of the United States," and is drilled for several days under proper authority, and shortly afterwards enlists in the military service of the United States, he may under that statute maintain an action against the town to recover such pay for a time not exceeding ninety days from his enlistment, and also for the time spent in drilling.

An enlisted soldier can maintain no action against a town to recover money for a uniform, under a vote of the town appointing a committee " to expend for each enlisted soldier a sum of money not exceeding ten dollars for a uniform."

CONTRACT brought by an inhabitant of Scituate to recover bounty money voted by that town to enlisted soldiers, and also for a uniform, and also to recover for time spent in drilling while enrolled in a company of volunteer militia.

It was agreed in the superior court that at a town meeting held on the 4th of May 1861 the town passed the following votes, under articles in the warrant authorizing them to do so : " Voted, to pay to each volunteer soldier raised in this town and being an inhabitant therein and mustered into the service of the United States for the defence of the government the following sums, to wit: to each soldier (except commissioned officers and first and second sergeants) so mustered and enlisting, and having a family, fifteen dollars per month in addition to the sum allowed by the United States per month and during such service, and to each soldier not having a family the sum of ten dollars per month for like service. Voted, that a committee of seven be appointed and they are hereby instructed to expend for each enlisted soldier being an inhabitant of this town a sum of money not exceeding ten dollars for a uniform. Voted, that each volunteer soldier belonging to this town be allowed one dollar per day for each and every day he is drilled under proper authority." A vote was also passed, naming the committee above referred to.

On the 20th of May 1861 the plaintiff with about sixty others signed a paper agreeing " to be enrolled into a company of volunteer militia, to be raised in the towns of Scituate, Marshfield and vicinity, subject to orders of the commander-in-chief; and in consideration of arms and equipments to be furnished us by the Commonwealth we do hereby agree to serve for the period of five years, unless sooner discharged agreeably to law, and this enlistment we enter into with the full understanding that we are liable at any moment to be ordered into active service under the government of the United States; " they were accepted by the governor on the 21st of May, and soon afterwards met and elected officers and organized themselves as a military company, according to the laws of the Commonwealth. On the 10th of June, after the plaintiff had spent five and one half days drilling under authority of the captain of his company, notice was given that this company could not be included as a company in one of the regiments of United States volunteers, and thereupon on the 15th of June the plaintiff enlisted in the military service of the United States, as recited in the opinion.

Upon these facts judgment was rendered in the superior court for the defendants ; and the plaintiff appealed to this court.

*J. K. Hayward*, for the plaintiff.

*B. W. Harris*, for the defendants.

GRAY, J. The vote of the town of Scituate of May 4th 1861 " to pay to each volunteer soldier" (except officers of a certain rank) "raised in this town and being an inhabitant therein and mustered into the service of the United States for the defence of the government," namely, " to each soldier so mustered and enlisting, and having a family, fifteen dollars per month in addition to the sum allowed by the United States per month and during such service," took, when accepted by the plaintiff, the form of a contract between him and the town, which the legislature afterwards confirmed for the period of ninety days from his enlistment in a militia company on the 21st of May 1861, and then terminated. *Grover* v. *Pembroke, ante,* 88. The only question under this vote, not covered by the opinion in that case, arises upon the following facts : Upon the 10th of June

1861 the plaintiff and other members of this company received notice through their captain by an order of the governor that they could not be included as a company in one of the regiments of United States volunteers, nor as one of the companies to be placed in camp under the *St.* of 1861, *c.* 219; but that any of its members who would sign a new enlistment roll might be included in one of the regiments of volunteers then being raised for the United States service. The plaintiff signed such an enlistment roll, and was mustered into the service of the United States on the 15th of June. It is now contended on the part of the town that the plaintiff did not enter the service of the United States under his original enlistment into the militia of the Commonwealth, or as a member of a company of the militia, but solely under his new enlistment directly into the service of the United States, which he was under no obligation to enter into, and that he does not therefore come within the terms of the vote of the town. But there is no ground for such a restriction of those terms. The plaintiff brings himself within the very words of the vote. He was a " volunteer soldier, raised in this town, and an inhabitant therein, and mustered into the service of the United States for the defence of the government." This vote, which followed the words of the corresponding article in the warrant, was not limited to those already mustered into the United States service, or who had put themselves into a position in which they could not avoid being so mustered in. The question now before the court is not of the completion of the contract between the plaintiff and the United States, but between the plaintiff and the town. The town offered him a bounty if he would volunteer and be mustered in. He accepted the offer by entering into an organization of militia which was liable to be called into the national service. The contract thus made between the plaintiff and the town was ratified by the legislature. When the government called for men in the form of volunteer regiments, instead of militia companies, he carried out his contract with the town, according to its spirit and purpose, to the best of his ability, and he had a right to rely upon that contract to the extent to which it had been so ratified by statute. He is

therefore entitled to recover at the rate of fifteen dollars a month, for ninety days, under his first count.

Under his second count, he can recover nothing; for the town never promised to pay him anything for a uniform, but simply appointed a committee " to expend for each enlisted soldier being an inhabitant of this town a sum of money not exceeding ten dollars for a uniform." The object was not to pay him ten dollars, but to see that he had a uniform, and if he obtained a uniform from the United States or any other source, or for any other reason the committee did not see fit to expend ten dollars for a uniform for him, the town was not bound to pay him ten dollars. The case in this respect falls within the principle of *Williams* v. *Plymouth, ante*, 86.

The plaintiff's claim under the third count for five days and a half drilling within a month after his enlistment into the volunteer militia stands· upon the same ground as his claim for bounty during the ninety days next succeeding that enlistment. The promise of the town, " that each volunteer soldier belonging to this town be allowed one dollar per day for each and every day he is drilled under proper authority," was one of the considerations on which he enlisted. It was within the scope of the articles in the warrant " to raise and appropriate such sums of money as may be necessary or proper to carry out any or all of , the above purposes or any other purpose deemed expedient for arming and equipping soldiers of this town called ·into the service of the United States;" and "to act and do anything in relation to the above." *Grover* v. *Pembroke, ante*, 88. It is agreed that he was drilled under the proper authority of the captain of his company of militia. It does not appear, and is not material, whether any part of this drilling took place before the passage of the *St.* of 1861, *c.* 222. The provision of § 3 of that statute, that " no pay shall be hereafter allowed by any town or city for the expense of drilling," clearly prohibits only the making of such contracts for the future, and does not prohibit the performance of contracts ratified by that statute, and on the faith of which soldiers had enlisted.

*Judgment for the plaintiff accordingly.*